UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| TODD A. GORMAN, ) | |
| ) | Civil No. 5:20-cv-00514-GFVT |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **&** |
| ) | **ORDER** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Claimant Todd Anthony Gorman seeks judicial review of the Commissioner of Social Security's decision, denying his Title II application for disability insurance benefits. Mr. Gorman brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors committed by the Administrative Law Judge (ALJ) charged with reviewing Mr. Gorman's case. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Gorman's Motion for Summary Judgment and **GRANT** the Commissioner's motion.

**I**

**A**

Mr. Gorman initially filed an application for disability insurance benefits on November 8, 2018, alleging disability beginning on August 1. [Transcript (hereinafter "Tr.") 158-59.] Mr. Gorman was found non-disabled, and his claim was initially denied on January 29, 2019. [Tr. 15, 59.] After reconsideration, his claim was again denied on July 2. [Tr. 70-82.] On August 22, Mr. Gorman requested a hearing by an ALJ, and a telephone hearing was conducted on June

23, 2020. [Tr. 95, 123.][1]  On July 1, ALJ Carr reviewed Mr. Gorman's claim, found him non-disabled, and denied his claim. [Tr. 26-27.] Mr. Gorman requested a review of the ALJ's decision, which the Appeals Council denied on November 30. [Tr. 1.] The Appeals Council's denial made the ALJ's decision final. On December 28, Mr. Gorman appealed to this court. [R. 1.]

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work experience) prevent him from

---

[1] All parties consented to a telephone hearing due to the Coronavirus pandemic, pursuant to 20 C.F.R. § 404.936(c). [Tr. 15.]

2

doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.* at 423.

Before completing the five-step analysis, ALJ Carr first determined that Mr. Gorman remained insured through December 31, 2023, making him eligible to file a claim for disability insurance benefits. [Tr. 15; R. 172.] ALJ Carr then completed the analysis to determine Mr. Gorman's disability status. [Tr. 17.]

ALJ Carr first evaluated whether Mr. Gorman held "substantial gainful employment" during the period in which he claimed to be disabled. To determine whether an individual has engaged in "substantial gainful employment," the individual must have engaged in "work activity that involves doing significant physical or mental activities," and work that "is usually done for pay or profit, whether or not a profit is realized." [Tr. 16 (citing 20 C.F.R. §§ 404.1572(a)-(b))]. ALJ Carr found that Mr. Gorman engaged in substantial gainful activity from August 1, 2018, through September 15, but that the record was unclear as to whether Mr. Gorman maintained substantial gainful employment from August 1, through November 1. [Tr. 17-18.] Thus, ALJ Carr declined to find a "step 1 impediment," due to the "opacity" in the record. [Tr. 18.]

3

At step two, ALJ Carr found that Mr. Gorman had the following severe impairments: "obesity, degenerative disc disease (DDD) and spinal stenosis of the lumbar spine, mild DDD of the cervical spine, and bilateral plantar fasciitis and arthritis." [Tr. 18.] At step three, the ALJ concluded that Mr. Gorman "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 19.]

Before proceeding to step four, ALJ Carr determined Mr. Gorman's residual functional capacity (RFC). *See* 20 CFR § 404.1520(e). After considering the record, the ALJ made the following determination regarding Mr. Gorman's RFC:

> The undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can stand and/or walk for four hours in an eight-hour workday. The claimant can occasionally push/pull. The claimant can occasionally reach overhead and frequently reach in all other directions. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he cannot climb ladders, ropes, or scaffolds. The claimant cannot have exposure to unprotected heights or uneven terrain. The claimant can tolerate frequent exposure to extreme cold, extreme heat, humidity, and vibration. The claimant cannot operate a motor vehicle for commercial purposes or operate hazardous machinery.

[Tr. 20.] After determining Mr. Gorman's RFC, the ALJ proceeded to step four.

Here, ALJ Carr considered the testimony of a vocational expert and concluded that Mr. Gorman would not be able to perform any of his past relevant work as a diesel mechanic or a truck driver. [Tr. 25.] At step five, ALJ Carr determined that there were jobs in the national economy that Mr. Gorman could perform, specifically office helper, routing clerk, and mail sorter. [Tr. 25-26.] Consequently, the ALJ concluded that Mr. Gorman was not disabled under the Social Security Act and did not qualify for disability insurance benefits. [Tr. 26; *see* 42 U.S.C. § 416(i).]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high…It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Hum. Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite

conclusion. *See Ulman*, 693 F.3d at 714 (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

Mr. Gorman seeks relief, alleging that ALJ Carr erred in finding him non-disabled. Specifically, Mr. Gorman alleges that (1) ALJ Carr failed "to accommodate Mr. Gorman's balance issues in the RFC [residual functional capacity]," and (2) the ALJ "fail[ed] to consider all of the claimant's impairments and formulat[ed] an RFC that does not accurately describe the claimant." [R. 11-1 at 2, 6.] For the reasons set forth below, this Court finds Mr. Gorman's arguments unpersuasive.

### A

Mr. Gorman first argues that the "ALJ failed to accommodate Mr. Gorman's balance issues in the RFC." [R. 11-1 at 2.] Specifically, he claims that ALJ Carr did not properly include his "medically necessary" cane use and "balance impairments" when determining and presenting the RFC to the vocational expert who testified about Mr. Gorman's ability to perform other jobs in the national economy. *Id.* Mr. Gorman cites the opinion of his treating physician, Dr. Amanda Applegate, who, on June 2, 2020, noted that a cane was medically necessary for Mr. Gorman to ambulate and balance as early as January 2020. *Id.* at 2–3.

Mr. Gorman further argues that the ALJ improperly gave greater weight to the opinions of Drs. Sudhideb Mukherjee, MD, and Timothy Greg, MD, the consulting physicians who reviewed his medical records in January 2019 and July 2019, which is prior to Mr. Gorman's alleged cane use. *Id.* at 3. Mr. Gorman contends that the ALJ should have given greater weight to Dr. Applegate's June 2020 opinion. [Tr. 24.] Because the consulting physicians did not have an opportunity to review the most recent medical evidence regarding Mr. Gorman's worsening

6

condition, he argues that the consulting physicians' "opinions cannot constitute substantial evidence for the ALJ to rely on for the entire period at issue." [R. 11-1 at 3.]

Mr. Gorman also argues that ALJ Carr "cherry-picked notes from the treatment record to attempt to establish that Mr. Gorman does not require an assistive device for either ambulation or balancing, which contradicts the medical evidence." *Id.* at 3. He cites several instances in the ALJ's decision, claiming that ALJ Carr selected these examples to provide support for his decision, rather than holistically considering the record. *Id.* at 5.

In response, the Commissioner argues that the "ALJ fully considered the limitations stemming from Plaintiff's back pain and sciatica and adequately accounted for those impairments by limiting him to a range of light work with limited standing and walking requirements . . . ." [R. 17 at 7; Tr. 20.] The Commissioner further argues that the ALJ's finding that Mr. Gorman's "claimed inability to walk more than 90 feet without a cane or sit or stand much were inconsistent with the record" was supported by substantial evidence. [R. 17 at 7; Tr. 21.]

The Commissioner also addresses Mr. Gorman's argument involving the weight assigned to the physicians' opinions in the record. First, the Commissioner contends Mr. Gorman is incorrect in arguing that ALJ Carr assigned "too little weight" to Dr. Applegate's opinion because, "in doing so, Plaintiff ignores that the regulations governing considering medical source statements have changed, and that those that apply to his claims no longer mandate an ALJ to 'weigh' opinions." [R. 17 at 9 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017))).] Second, the Commissioner argues that ALJ Carr did not rely on the opinions of consulting physicians, Drs. Mukherjee and Gregg, entirely. *Id.* Rather, the ALJ "agreed with

some of the doctors' findings but found Mr. Gorman to be more limited in many respects," which ALJ Carr included in his determination of Mr. Gorman's RFC. *Id.*

The Commissioner also responds to Mr. Gorman's argument regarding his worsening condition, stating that "aside from Dr. Applegate's extreme opinion – which the ALJ gave good reasons for finding unpersuasive – there is no indication in the record that his back condition worsened after July 2019 when Dr. Gregg completed his review." [R. 17 at 9; Tr. 77-80.] In support, the Commissioner argues that "even some of the evidence Plaintiff cites from December 2019 shows that Plaintiff ambulated without assistance that month despite a '[m]ild limping gait.'" [R. 17 at 10.] As a result, the Commissioner argues that "the ALJ was reasonable in reading the record as a whole as indicating that Plaintiff did not use a cane at the bulk of his medical appointments." *Id.*

The Court agrees with the Commissioner. First, the Commissioner is correct that the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *See* 20 C.F.R. § 416.920c(a). This includes a treating physician's opinion. *See id.*; *Fox v. Kijakazi*, 2022 WL 273422, at *3-4 (E.D. Ky. Jan. 28, 2022); *Young v. Saul*, 2021 WL 4295152, at *5 (W.D. Ky. Apr. 27, 2021); *Jones v. Berryhill*, 392 F. Supp. 3d 831, 852 (M.D. Tenn. 2019).

Rather, pursuant to 20 C.F.R. 416.920(c), an ALJ must consider all medical opinions contained in the record. There are several factors an ALJ must consider when evaluating medical opinions: "(1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; (5) and 'other factors that tend to support or contradict a medical opinion or prior administrative medical findings.'" *Rodriguez v. Comm'r of Soc Sec.*, 2022 WL 807443, at *5

8

(M.D. Fla. May 17, 2022) (citing 20 C.F.R. § 404.1520c(c)). The most important factors are supportability and consistency. *See Stemple v. Kijakazi*, 2021 WL 4060411, at \*9 (N.D. Ohio Sept. 7, 2021).[2] The Court finds that the ALJ has adequately considered all the medical opinions regarding Mr. Gorman's case.

The Court also finds that the ALJ appropriately considered Mr. Gorman's medical record. ALJ Carr quotes Dr. Applegate's opinion and found it unpersuasive. [Tr. 24.] After considering the opinions of Drs. Mukherjee and Greg, the state consulting physicians, as well as the evidence in the record, ALJ Carr determined that Dr. Applegate's opinions "lack[ed] specificity and [] a rationale to support her opinions." [Tr. 24.] The ALJ cited to the record, describing examinations and physical therapy sessions where Mr. Gorman did not use a cane, as well as reports from Mr. Gorman himself, reporting "that he did not use an assistive device." [Tr. 21 (citing 795, 801, 806, 813, 818).]

Additionally, in evaluating Dr. Applegate's opinion, ALJ Carr considered Mr. Gorman's cane use and balancing capabilities—both of which are mentioned in Dr. Applegate's opinion—and found that Mr. Gorman's medical records supported the RFC he devised and presented to the vocational expert. [Tr. 24.] ALJ Carr inquired about cane use in his hypothetical questions to the vocational expert, indicating that he was considering the possibility and impact of cane use on Mr. Gorman's disability status. [Tr. 54-55.] However, ALJ Carr did not deny that Mr. Gorman has some physical limitations. [Tr. 24.] In fact, the ALJ discussed Mr. Gorman's antalgic gait, which was noted in several examinations, and found unpersuasive the physicians'

---

[2] Courts are moving away from a "treating physician rule," in which an ALJ generally gives controlling weight to a claimant's treating physician, for all claims filed after March 27, 2017, given the change in Social Security regulations. *See* 20 C.F.R. § 416.920(c); *see, e.g.*, *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); *Stemple v. Kijakazi*, 2021 WL 4060411, at \*4 (N.D. Ohio Sept. 7, 2021); *Young*, 2021 WL 2252107, at \*4.

9

specific opinions that Mr. Gorman has "unlimited balancing" capabilities.[3] [Tr. 24.] Ultimately, the Court finds that ALJ Carr has sufficiently addressed Mr. Gorman's cane use and balancing capabilities in his explanation for the weight given to Dr. Applegate's opinion.

Mr. Gorman's claim that ALJ Carr "cherry-picked" evidence from the record to support his opinion is also without merit. [R. 11-1 at 3.] In his decision, ALJ Carr discussed at length evidence from Mr. Gorman's medical records. [Tr. 22-24.] He considered both severe (obesity, degenerative disc disease (DDD), spinal stenosis of the lumbar spine, mild DDD of the cervical spine, and bilateral plantar fasciitis and arthritis) and non-severe impairments (depression, mental health) [Tr. 35-37], and asked during the hearing about Mr. Gorman's alleged impairments and their impact on his ability to work. [Tr. 20-21.] The ALJ cited to the record, and "considered all the symptoms and the extent to which th[o]se symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ." [Tr. 20.] He cited examinations where Mr. Gorman's strength, gait, and mobility were evaluated, including the results of an examination conducted in 2020, which also supported the ALJ's decision. [Tr. 21-24, 834, 905.]

Consequently, the ALJ determined that, "while the claimant is limited to some degree, the record does not support that he is limited to the extent alleged." [Tr. 24.] Ultimately, this Court finds that ALJ Carr holistically considered Mr. Gorman's record and reached a reasonable conclusion, and the ALJ's decision is supported by substantial evidence.

---

[3] Generally, the ALJ found the consulting physicians' opinions regarding Mr. Gorman's abilities to be more persuasive than Mr. Gorman's treating physician, and supported by the record. However, the ALJ did not find the physicians' specific opinions regarding Mr. Gorman's balancing capabilities to be consistent with the record. As a result, the ALJ adopted the physicians' opinions in part, while including the ALJ's assessment of Mr. Gorman's balancing capabilities as supported by the record, to ensure that Mr. Gorman's RFC was an accurate reflection of his physical capabilities. [Tr. 24.]

**B**

Next, Mr. Gorman argues that "the ALJ failed to consider all of the claimant's impairments and formulated an RFC that does not accurately describe the claimant." [R. 11-1 at 6.] Specifically, Mr. Gorman alleges that ALJ Carr failed to consider his headaches or migraines, as well as his depression. *Id.* As a result, Mr. Gorman argues, the ALJ created an RFC that does not accurately capture his capabilities to perform another job in the national economy. *Id.* at 7.

**1**

First, Mr. Gorman argues that ALJ Carr did not consider his headaches or migraines in formulating Mr. Gorman's RFC. [R. 11-1 at 6.] This failure, claimant argues, means ALJ Carr presented an inaccurate picture of Mr. Gorman's capabilities to the vocational expert. *Id.* at 7. Consequently, Mr. Gorman argues, the vocational expert's testimony cannot be used as substantial evidence justifying the ALJ's decision. *Id.*

In his response, the Commissioner argues the ALJ did not err in failing to address Mr. Gorman's headaches explicitly, considering the "scant evidence of record regarding Plaintiff's alleged headaches." [R. 17 at 11.] The Commissioner argues that the "evidence as a whole does not show that [Mr. Gorman] complained of headaches to providers on any ongoing basis, and the ALJ was therefore reasonable in not explicitly discussing them." *Id.* at 12. Aside from Mr. Gorman's own testimony, he only cites to one treatment record, which was dated in 2017, prior to the period in which Mr. Gorman is claiming disability. [R. 17 at 12; Tr. 46, 554.] The Commissioner argues that Mr. Gorman's failure to "complain of headaches to medical providers during the relevant time period undermines his claims on appeal." [R. 17 at 12.]

11

The Court finds the Commissioner's argument persuasive. An ALJ is not required to explicitly mention every item in a claimant's record in his opinion, as long as the ALJ considers the entire record and all available evidence and reaches "a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F.App'x 195, 199 (6th Cir. 2010). The ALJ's consideration of Mr. Gorman's neck impairments, from which he claims his headaches stem, and the "symptoms" associated with the neck impairment, provided adequate consideration of Mr. Gorman's headaches. [Tr. 21.] The ALJ noted that Mr. Gorman "has severe neck pain that radiates across his shoulders and down his arms 'at times.' He cannot drive and holding his arms in front of him aggravates his neck pain." [Tr. 21.] ALJ Carr ultimately found "after careful consideration of the evidence . . . [] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." [Tr. 21.] However, he found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.* The ALJ supported his findings, citing to physical examinations where Mr. Gorman "had intact shoulder shrug, intact deltoid, biceps, triceps, and grip strength . . . ." [Tr. 21 (citing Tr. 742).]

The RFC that ALJ Carr developed, and the hypothetical questions presented to the vocational expert, sufficiently reflect the limitations that Mr. Gorman's neck impairments and the associated symptoms, such as headaches, impose. In Mr. Gorman's RFC, ALJ Carr included that the "claimant can occasionally push/pull," and that the "claimant can occasionally reach overhead." [Tr. 53.] The limitations imposed by the word "occasionally" indicate that the ALJ took into consideration Mr. Gorman's conditions and limited his RFC to reflect the claimant's impairments and their symptoms, including pain.

12

The sparse mention of headaches in Mr. Gorman's medical records also undermines the persuasiveness of Mr. Gorman's argument. Mr. Gorman only provided two pieces of evidence to support his claims regarding headaches: his own testimony and one medical record, dating back to 2017.[4] [Tr. 46, 554; R. 17 at 12.] Here, the Court finds that one medical record prior to Mr. Gorman's alleged disability onset date is insufficient support for his subjective claim. Furthermore, a medical examination conducted on October 18, 2018, found that Mr. Gorman was "negative for dizziness, tremors, seizures, syncope, facial asymmetry, speech difficulty, light-headedness, numbness, and headaches." [Tr. 741.] This exam, dated within the period in which Mr. Gorman claims disability, undermines Mr. Gorman's argument. Accordingly, the Court will not reverse the ALJ's decision as to Mr. Gorman's headache claim.

**2**

Lastly, Mr. Gorman argues that ALJ Carr's failure to include his depression in the RFC constituted reversible error. [R. 11-1 at 6.] In failing to mention his mental health, Mr. Gorman argues that "the ALJ presented hypothetical RFCs that did not adequately describe Mr. Gorman and his impairments . . . ." *Id.* at 8. Mr. Gorman further argues that, although his depression was determined to be non-severe, it still required consideration and must be included in "formulating an RFC." *Id.* at 6. Mr. Gorman states that he takes medication for his depression, and that the medication caused him "to have short-term memory problems." *Id.* at 8. According to Mr. Gorman, "he could walk into his kitchen and forget why." [R. 11-1 at 8; Tr. 50-51.]

The Commissioner argues that the ALJ found that Mr. Gorman's depression was non-severe, "i.e., that it did not significantly affect his ability to perform basic work activities." [R.

---

[4] "Subjective claims of disability pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability." *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (citing *Casey v. Sec'y of Health and Hum. Servs.*, 987 F.2d 1230 (6th Cir. 1993); *see also Duncan v. Sec'y of Health and Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

13

17 at 11; Tr. 18; *see* 20 C.F.R. § 404.1522(a).] The Commissioner further argues that "there is extremely limited evidence in the record indicating that Plaintiff complained of depression or had any work-related limitations that stemmed from it." [R. 17 at 11.] The Commissioner also argues that Mr. Gorman failed to consider that ALJ Carr ultimately found him able to "perform three representative unskilled occupations." [R. 17 at 11; Tr. 26.] Unskilled jobs impose minimal mental demands, typically involving "dealing with things rather than data or people." [R. 17 at 12 (citing 20 C.F.R. pt. 404, subpt. P., App. 2, § 201.00(i), 202.00(g)).] As a result, the Commissioner argues that Mr. Gorman has failed to demonstrate that not incorporating his depression into the RFC constituted reversible error. [R. 17 at 12.]

  The Court agrees with the Commissioner. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). As the finder of fact in this case, ALJ Carr considered Mr. Gorman's mental health, including evaluations conducted by State agency psychological consultants, Ilze Sillers, P.h.D., and Jane Brake, P.h.D. [Tr. 19.] Dr. Sillers first performed a mental evaluation on Mr. Gorman, finding that "claimant did not have a severe mental impairment." [Tr. 19.] When Mr. Gorman's case was reconsidered in 2019, Dr. Brake "affirmed Dr. Sillers' opinion." *Id.* The doctors also found that Mr. Gorman had "medication controlled depression and no mental allegations . . . ." *Id.* ALJ Carr also cites a mental examination in 2019, where Mr. Gorman "denied depression and he had a normal mental status examination," further noting "the claimant had normal mental status examinations during the relevant period." *Id.* The ALJ also considered the "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders in the Listing of Impairments

(20 C.F.R. Part 404, Subpart P, Appendix 1)." [Tr. 18.] Consequently, ALJ Carr determined that "claimant's medically determinable mental impairment of depression does not cause more than minimal limitation." *Id.*

ALJ Carr's determination that Mr. Gorman would be capable of performing "light work" at the "unskilled" level as an office helper, routing clerk, or mail sorter was reasonable. [Tr. 26.] In these roles, Mr. Gorman's interactions with others would be minimal, and the position would not be mentally demanding. [R. 17 at 12.] Even if the ALJ erred in failing to mention Mr. Gorman's depression in the RFC, this would not constitute reversable error. Considering the ALJ's findings of "minimal limitation" stemming from Mr. Gorman's disability, as well as the limited mental demands required by the jobs determined by the vocational expert, the Court finds that the outcome would not have been different had ALJ Carr included the depression explicitly in Mr. Gorman's RFC. [Tr. 18, 26; R. 11-12]; *see Acevedo v. Saul*, --- F. Supp. 3d ----, 2021 WL 6110933, at *9-10 (S.D.N.Y. Dec. 27, 2021) (citing *Michelle B. v. Comm'r of Soc. Sec.*, 2021 WL 3022036, at *7 (N.D.N.Y. July 16, 2021)).

### III

Accordingly, pursuant to section four of 42 U.S.C. § 405(g) and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Todd Anthony Gorman's Motion for Summary Judgment **[R. 11]** is **DENIED**;

2. The Commissioner's Motion for Summary Judgement **[R. 17]** is **GRANTED**; and

3. Judgment in favor of the Commissioner will be entered promptly.

This is the 23d day of June, 2022.

Gregory F. Van Tatenhove
United States District Judge

16